# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

SHERLENA E. DAVIS,
                    Appellant,

                    v.

DEPARTMENT OF THE AIR FORCE,
                    Agency.

DOCKET NUMBER
DA-0752-21-0227-I-1

DATE: February 2, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Sherlena E. Davis, Oklahoma City, Oklahoma, pro se.

Michael J. Taber and Michele S. McNaughton, Tinker Air Force Base, Oklahoma, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Member Leavitt dissents without an opinion.

## FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed her removal for attendance reasons. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to supplement the administrative judge's findings on the appellant's claim of religious discrimination, we AFFIRM the initial decision.

## BACKGROUND

¶2 The appellant was a GS-06 Pharmacy Technician stationed at the Medical Treatment Center (MTC) in Tinker Air Force Base, Oklahoma. Initial Appeal File (IAF), Tab 1 at 1, 7. Her primary duties included filling and refilling prescriptions, entering orders into a medical database, checking medication stock, inspecting the pharmacy, and consulting with patients and physicians. IAF, Tab 29, Hearing Transcript (HT) at 14 (testimony of the appellant's supervisor), 141-42 (testimony of the appellant). The appellant worked an 8-hour per day schedule, Monday through Friday. IAF, Tab 7 at 56.

¶3 Beginning in March 2020, in response to the COVID-19 pandemic, the agency made a series of changes to its operations in the pharmacy and in the MTC as a whole. HT at 14-22 (testimony of the appellant's supervisor). As relevant here, one of the changes was that the agency began requiring people to wear masks when entering the MTC. The agency stationed personnel at the MTC entryway both to screen individuals for fever and to enforce its masking policy.

HT at 20-21 (testimony of the appellant's supervisor). Nevertheless, employees were able to remove their masks once inside the facility, as long as they kept physically distanced from other people. HT at 22, 28 (testimony of the appellant's supervisor).

¶4    In September 2020, the appellant was stopped twice at the entryway for not wearing a mask. HT at 23, 28 (testimony of the appellant's supervisor), 135-36 (testimony of the appellant). The appellant had several meetings with agency officials, including her supervisor, the Officer in Charge of the pharmacy, and the Noncommissioned Officer in Charge, and informed them that she had a sincerely held religious belief that precluded her from wearing a mask or other face covering. HT at 23-25, 54-55 (testimony of the appellant's supervisor), 135-37 (testimony of the appellant).

¶5    In November 2020, the agency made its masking policy more stringent, requiring individuals in the MTC to be masked at all times unless they were alone in a room, behind closed doors. HT at 22-23, 28-29 (testimony of the appellant's supervisor). Things came to a head on November 2, 2020, when the appellant met with her first- and second-level supervisors and the Noncommissioned Officer in Charge and was informed that, if she did not wear a face covering, she would not be able to enter the MTC and report for duty. IAF, Tab 14 at 109; HT at 52 (testimony of the appellant's supervisor), 154 (testimony of the appellant). The appellant notified these officials that she intended to pursue her remedies through the equal employment opportunity (EEO) process. IAF, Tab 14 at 109. The appellant filed an informal EEO complaint on November 4, 2020, and subsequently filed a formal complaint of discrimination. HT at 140 (testimony of the appellant).

¶6    In early November, the appellant began to absent herself from work in order to avoid the mask requirement. IAF, Tab 14 at 68, 70, 86; HT at 29 (testimony of the appellant's supervisor). The appellant took annual leave from Wednesday, November 4 through Friday, November 6, 2020. IAF, Tab 20 at 9. The

following week, the appellant took annual leave on November 9, 10, and 12, 2020, with November 11 being the Veterans Day Holiday. IAF, Tab 14 at 74. It is not clear from the record what the appellant's status was for Friday, November 13, 2020. It appears that, at this point, her annual leave balance was exhausted. IAF, Tab 14 at 82, Tab 24 at 4-5; HT at 29 (testimony of the appellant's supervisor). Nevertheless, the appellant remained absent from work. On each day of the following workweek, beginning November 16, 2020, the appellant informed her supervisor that she would not be coming into work due to her religious objection to the mask requirement. IAF, Tab 14 at 68, 70, 86, 94. It appears that the next time the appellant communicated with her supervisor was December 2, 2020, when she retroactively requested 6 hours of annual leave, 3 hours each on the days before and after Thanksgiving. *Id.* at 91.

¶7      After that, the appellant did not communicate with her supervisor again until January 2021, when her supervisor proposed her removal. IAF, Tab 7 at 56-58; HT at 40 (testimony of the appellant's supervisor). The proposal was based on two charges—unauthorized absence and failure to comply with established leave procedures. IAF, Tab 7 at 56. Under the unauthorized absence charge, the agency alleged that the appellant failed to report for duty as scheduled on November 17 and 18, 2020, and from November 30, 2020, to January 4, 2021. *Id.* Under the failure to comply with established leave procedures charge, the agency alleged that the appellant failed to follow leave requesting procedures on those same dates. *Id.* After the appellant responded, the agency issued a decision sustaining the charges and removing her effective April 5, 2021. IAF, Tab 1 at 7, Tab 7 at 16-18, 29-34.

¶8      The appellant filed a Board appeal, raising affirmative defenses of harmful procedural error, retaliation for EEO activity, and discrimination based on religion. IAF, Tab 1 at 3, 5, Tab 4 at 2, Tab 21 at 3. After a hearing, the administrative judge issued an initial decision affirming the appellant's removal. IAF, Tab 27, Initial Decision (ID). The administrative judge sustained both

charges and upheld the removal penalty. ID at 6-10, 19-21. She further found that the appellant failed to prove any of her affirmative defenses. ID at 10-18.

¶9 The appellant has filed a petition for review, contesting the administrative judge's findings on her claims of religious discrimination and EEO reprisal. Petition for Review (PFR) File, Tab 1. The agency has responded to the petition for review, and the appellant has filed a reply to the agency's response.[2] PFR File, Tabs 4-5.

**ANALYSIS**

¶10 The Board generally will consider only issues raised in a timely filed petition or cross petition for review. 5 C.F.R. § 1201.115. The appellant does not contest the administrative judge's findings on the charges, nexus, or penalty, or her findings on the appellant's affirmative defense of harmful procedural error. PFR File, Tab 1 at 63. Indeed, the appellant appears to concede that her removal would promote the efficiency of the service but for the issues of religious discrimination and retaliation for EEO activity. *Id.* We have reviewed the administrative judge's findings on the uncontested issues of charge, nexus, penalty, and harmful procedural error, and we discern no basis to disturb them. ID at 6-10, 17-21. Arguably, the two charges should have been merged to the extent that they cover the same dates and are otherwise based on the same facts. *See McNab v. Department of the Army*, 121 M.S.P.R. 661, ¶ 4 n.3 (2014). Nevertheless, even if the administrative judge erred in considering these charges separately, we find no indication that this had any effect on the outcome of the initial decision. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (holding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis to reverse an initial decision). This is

---

[2] The appellant also filed a supplement to her petition for review, but this consists only of two identical copies of the pleading that she submitted in her original petition for review filing. PFR File, Tab 1 at 63, Tab 2.

particularly so considering that the deciding official credibly testified that he would have removed the appellant based on either of the two charges alone. ID at 14 n.10; HT at 92-93 (testimony of the deciding official).

¶11    However, even if an agency proves its charges, the Board may not sustain an adverse action if the appellant proves by preponderant evidence that the agency's decision was based on a prohibited personnel practice under 5 U.S.C. § 2302(b). 5 U.S.C. § 7701(c)(2)(B); 5 C.F.R. § 1201.56(b)(2)(i)(C), (c)(2). In this case, the appellant claims that the agency's decision was based on two different prohibited personnel practices under 5 U.S.C. § 2302(b)(1)(A)—discrimination based on religion and retaliation for EEO activity. IAF, Tab 21 at 3; *see* 42 U.S.C. § 2000e-16(a). The administrative judge considered the appellant's religious discrimination claim under both disparate treatment and reasonable accommodation theories. ID at 10-16.

¶12    An appellant who asserts an affirmative defense of disparate treatment discrimination based on religion, in violation of 42 U.S.C. § 2000e-16, must prove by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action. *Pridgen v. Office of Management & Budget*, 2022 MSPB 31, ¶¶ 20-21. However, to obtain the full measure of relief available under the statute, the appellant must show that religion was a but-for cause of the action. *Id.*, ¶ 22. In determining whether the appellant has met her burden, the Board must consider all of the evidence together as a whole. *See id.* ¶ 24.

¶13    In her initial decision, the administrative judge found that the appellant failed to meet her initial burden of showing that her religious beliefs were a motivating factor in her removal. ID at 12. She found that the appellant presented no evidence to support her claim and that both the appellant's supervisor and the deciding official credibly testified that the removal action was not motivated by any animus toward the appellant for her religious convictions.

ID at 12; HT at 68-69 (testimony of the appellant's supervisor); HT at 91 (testimony of the deciding official).

¶14    On petition for review, the appellant argues that a Human Resources Specialist testified at the hearing that the appellant's religious beliefs were the root cause of her removal. PFR File, Tab 1 at 63. We find that the appellant has mischaracterized this testimony. The Human Resources Specialist conceded that the appellant's religious objection to wearing a mask led to the absences underlying her removal, a fact which is not in dispute. HT at 123 (testimony of the Human Resources Specialist). However, this testimony does not suggest that the religious convictions themselves, either alone or in conjunction with the unauthorized absences, were a motivating factor in the removal.

¶15    The appellant also argues that a Pharmacy Technician testified that her removal was based on religious discrimination. PFR File, Tab 1 at 63. We disagree with the appellant's characterization of this testimony as well. When asked whether "the root of the appellant's termination was because of her religious beliefs and not wearing a mask," this witness responded that he believed that her removal "was due to not wearing the mask." HT at 130-31 (testimony of the Pharmacy Technician). The record shows that this nonmanagerial, nonsupervisory employee was not involved in the removal process and that he misunderstood the nature of the charges underlying the removal. HT at 131 (testimony of the Pharmacy Technician). We find no basis to conclude that he had any knowledge of the motives of the responsible agency officials. In any event, although the appellant's religious beliefs, her refusal to wear a mask, and the absences underlying her removal are linked, a finding that the appellant was removed for either unauthorized absences or failure to follow masking policy does not entail a finding that the removal was motivated by the appellant's religious beliefs.

¶16    The appellant further argues that the proposing official initially included in the proposal notice information about the appellant refusing to wear a mask due

to her religious beliefs, but the Human Resources office deleted that language from the final copy of the proposal.  PFR File, Tab 1 at 63.  The appellant's argument is supported by the record.  HT at 48-49 (testimony of the appellant's supervisor), 122-23 (testimony of the Human Resources Specialist).  The supervisor's initial draft of the proposal is not included in the record, however, and the record does not otherwise reflect her words in substance, meaning, or context.  In any event, the record shows that the Human Resources office deleted this language because it determined that the masking requirement and the appellant's religious objections to it were not directly relevant to the absence-related charges.  HT at 122-23 (testimony of the Human Resources Specialist).  We find no basis to infer from this that religious discrimination was a motivating factor in the appellant's removal.

¶17      To prove an affirmative defense of discrimination based on a failure to accommodate an employee's religious beliefs, an appellant must show that she holds a bona fide religious belief that conflicts with an employment requirement; has informed her employer of the conflict; and was discharged or disciplined for failing to comply with the conflicting requirement.  *See Reed v. Department of Transportation*, 76 M.S.P.R. 126, 131 (1997); *Miller v. U.S. Postal Service*, EEOC Appeal No. 01930003, 1993 WL 1505208, at \*3 (Sept. 23, 1993).  If the appellant meets this burden, the Board will consider whether the agency has shown that it could not reasonably accommodate the appellant without undue hardship or that the appellant has been accommodated.[3]  *Miller*, 1993 WL

---

[3] Both Title VII and the Americans with Disabilities Act (ADA) require employers to make "reasonable accommodations" for their employees absent "undue hardship." 42 U.S.C. §§ 2000e(j), 12112(b)(5).  However, the standard for undue hardship in a religious accommodation case under Title VII is far lower than the standard for undue hardship in a disability accommodation case under the ADA.  *Petitioner v. Department of Energy*, EEOC Petition No. 0320130027, 2014 WL 4802110, at \*6 n.2. (Sept. 19 2014).  Under Title VII, the threshold for undue hardship is "more than a de minimis cost," 29 C.F.R. § 1605.2(e)(1), whereas under the ADA, the threshold for undue hardship is "significant difficulty or expense," 42 U.S.C. § 12111(10).

1505208, at *3. The reasonableness of an employer's accommodation must be determined on a case-by-case basis, taking into account the unique circumstances of each situation. *Id.* Accommodations for religious practices include, but are not limited to, voluntary substitutions or swaps, flexible scheduling, or lateral transfers and changes of job assignments. 29 C.F.R. § 1605.2(d)(1). Any reasonable accommodation proffered by the employer that removes the conflict between the employee's religious beliefs and the requirements of the workplace is sufficient to meet its accommodation obligation. *Miller*, 1993 WL 1505208, at *4. To show undue hardship, an agency must demonstrate that an accommodation would require more than a de minimis cost. *Trans World Airlines v. Hardison*, 432 U.S. 63, 74 (1977). Relevant factors may include the type of workplace, the nature of the employee's duties, the identifiable cost of the accommodation in relation to the size and operating costs of the employer, and the number of employees who will in fact need a particular accommodation. *Frances A. v. Department of Justice*, EEOC Appeal No. 2019004187, 2020 WL 7241814, at * 4 (Nov. 30, 2020).

¶18        In her initial decision, the administrative judge found that the appellant proved her prima facie case. Specifically, she found that the appellant had a bona fide religious belief that conflicted with the agency's masking requirement, the appellant communicated this fact to the agency, and the appellant's removal was based on absences related to her religious objections to the mask mandate. ID at 15-17. However, she also found that the agency met its burden of showing that accommodating the appellant's beliefs would have caused an undue hardship. ID at 17-19. The administrative judge found that the appellant suggested and the agency considered various forms of accommodation, including spending the day in a closed office typing prescriptions and working alone at the pharmacy at night, but the agency reasonably rejected those proposals due to unfeasibility and

safety and security concerns.[4] *Id.* As set forth below, we modify the initial decision to supplement these findings.

¶19 On petition for review, the appellant argues that it would not have been an undue hardship for the agency to allow her to work from home. PFR File, Tab 1 at 63. She argues that she previously worked at a Coumadin clinic, telephoned patients to schedule their appointments, and never had to go into the pharmacy to fill a prescription. *Id.* However, during the time period at issue, the appellant was not working at the Coumadin clinic; she was working at a pharmacy as a Pharmacy Technician, and filling prescriptions was a major part of her job. Moreover, the record shows that during the early stages of the pandemic, the pharmacy reduced staffing by having half of the staff work in the pharmacy and the other half "telework." HT at 15 (testimony of the supervisor). However, even though these employees' hours were recorded as telework and they were technically in duty status, there is no work that a Pharmacy Technician can perform from home, so these "teleworking" employees were, in reality, not performing any duties whatsoever. HT at 16, 18 (testimony of the appellant's supervisor). If there was any arrangement at any cost that the agency could have made for the appellant to perform some sort of work from home, there is no evidence of it in the record. An accommodation that would have essentially

---

[4] To the extent the administrative judge found that the agency offered reasonable accommodations in the form of wearing a scarf or face shield, such measures fell within the heart of the appellant's religious objections, and thus would not have removed the conflict between the appellant's religious beliefs and the requirements of the workplace. Moreover, the administrative judge's finding that the appellant's proposed accommodations needed to have enabled her to perform the "essential functions" of her position also appears to be incorrect. As set forth above, an accommodation for religious practices may include a change in job assignments. For the reasons set forth below, however, these errors do not warrant a different result. *See Panter v. Department of the Air Force*, 22 M.S.P.R. at 282 (holding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

required the agency to pay the appellant for not working would result in more than a de minimis cost, and therefore impose an undue hardship.

The appellant also argues that she could have stayed behind closed doors and typed all day, and that there are already several Pharmacy Technicians who do that. PFR File, Tab 1 at 63. However, there is no evidence in the record that this is the case. In any event, as the administrative judge correctly found, the appellant's proposal would essentially require that she remain in a closed office all day every day without leaving to use the restroom or for any other urgent reason that might come up, which is not realistic. ID at 15. Such an accommodation would thereby bring the appellant into contact with coworkers and/or patients when she would leave the closed office unmasked during the work day, thereby exposing those individuals to a heightened risk of contracting COVID-19. This would constitute an undue hardship to the agency. *See Aukamp-Corcoran v. Lancaster General Hospital*, No. 19-5734, 2022 WL 507479, at \*6-8 (E.D. Pa. 2022) (finding that granting a nurse's request for a religious exemption from an influenza vaccination requirement would result in an undue hardship due to the potential for increased hospitalization and death to patients); *Barrington v. United Airlines, Inc.*, 566 F. Supp. 3d 1102 (D. Colo. 2021) (holding that the increased risk of employees contracting COVID-19, if they were required to come into contact with unvaccinated coworkers, alone constituted an undue hardship).

¶20     In support of this determination, the Equal Employment Opportunity Commission's Compliance Manual on Religious Discrimination, Section 12 (Jan. 15, 2021), https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#_ftnref256, describes what constitutes more than a de minimis cost for purposes of determining undue hardship:

> Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business. For example, courts have found undue hardship where the accommodation diminishes efficiency in other jobs, infringes on

other employees' job rights or benefits, impairs workplace safety, or causes coworkers to carry the accommodated employee's share of potentially hazardous or burdensome work. Whether the proposed accommodation conflicts with another law will also be considered.

Example 37 of the Compliance Manual explains that a steel mill laborer's requested religious accommodation, to be permitted to wear a skirt because her faith prohibited her from wearing pants, would pose an undue hardship because the evidence established that wearing pants was necessary for safety reasons around the machinery operated by the laborer. Similarly, we find that the appellant's requested accommodation would impose an undue hardship because it would impair workplace safety during the COVID-19 pandemic. *See Barrington*, 566 F. Supp. 3d 1102; *see also Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382, 1383-84 (9th Cir. 1984) (holding that the employer did not have to accommodate the employee's request that he be permitted to maintain a beard when the company had a legitimate safety concern that the beard would prevent an airtight seal of a mask in the event of exposure to toxic gas and expose the company to liability); *Draper v. U.S. Pipe & Foundry Co.*, 527 F.2d 515, 521 (6th Cir. 1976) ("safety considerations are highly relevant in determining whether a proposed [religious] accommodation would produce an undue hardship on an employer's business"). This is particularly so given the wide segment of the population at increased risk for getting severely ill from COVID-19, including those with a weakened immune system, *see* Press Release, Centers for Disease Control and Prevention (CDC), CDC updates, expands list of people at risk of severe COVID-19 illness (June 25, 2020), https://www.cdc.gov/media/releases/2020/p0625-update-expands-covid-19.html, and the fact that the appellant worked in a medical setting, i.e., a pharmacy within the 300-400 employee MTC that also housed a family practice clinic, an optometry clinic, a flight medicine clinic, a physical therapy clinic, an x-ray area, a chiropractor, a pediatric clinic, and an OB/GYN clinic, HT at 19 (testimony of the appellant's supervisor). The appellant agreed that her clinic sees patients with compromised immune systems.

HT at 154 (testimony of the appellant). On July 14, 2020, before the events at issue in this appeal, the CDC indicated that it had "reviewed the latest science and affirms that cloth face coverings are a critical tool in the fight against COVID-19 that could reduce the spread of the disease," and that "[t]here is increasing evidence that cloth face coverings help prevent people who have COVID-19 from spreading the virus to others." Press Release, CDC, CDC calls on Americans to wear masks to prevent COVID-19 spread (July 14, 2020), https://www.cdc.gov/media/releases/2020/p0714-americans-to-wear-masks.html. The press release quoted the CDC Director as saying that "[c]loth face coverings are one of the most powerful weapons we have to slow and stop the spread of the virus – particularly when used universally within a community setting." *Id.* Under the particular circumstances of this case, we find that accommodation of the appellant's religious beliefs would have required more than a de minimis cost, and thereby imposed an undue hardship upon the agency.

¶21     The appellant further argues that the agency should have allowed her to work in the pharmacy alone, at night, when no other employees were present. PFR File, Tab 1 at 63. In her initial decision, the administrative judge found that the agency reasonably rejected this proposal "due to safety and security concerns, both because the appellant would be alone in the clinic after hours and because the pharmacy contains narcotics and other controlled drugs." ID at 15. The appellant disputes this finding, arguing that she would not have been in the building alone because housekeeping staff was nearby. In addition, there are cameras at the narcotics vaults, and she was the vault custodian for 2 years. PFR File, Tab 1 at 63. We are not persuaded that the presence of housekeeping staff somewhere in the building provides adequate security for a pharmacy during hours that it would otherwise be shut down and secured. Nor do we find that the appellant's religious accommodation needs should require the agency to remove any layers of security from the measures that it takes to protect the controlled substances and other valuable property contained within the pharmacy. As with

the accommodation addressed above, workplace safety concerns establish that this requested accommodation would involve more than a de minimis cost to the agency. For these reasons, we find that the appellant has not provided a sufficient basis for us to disturb the administrative judge's finding that the agency could not reasonably accommodate the appellant without undue hardship. ID at 14-16.

¶22 Although we hold that the appellant in this case has not shown that the agency could accommodate her religious belief without undue hardship, our holding is limited to the facts of this particular case. This is especially so considering the unique time period at issue in this appeal, which was at the height of the COVID-19 pandemic and prior to the widespread availability of vaccines. The Board will analyze a religious accommodation claim based on the facts in existence at the time in which the operative events occurred. *See Prach v. Hollywood Supermarket, Inc.*, No. 09-13756, 2010 WL 4608781, at *1 (E.D. Mich. 2010) (holding that the reasonableness of a religious accommodation is generally determined on a case-by-case basis according to the facts as they existed at the time of employment). We do not intend to foreclose the possibility that an employee's religious objection to masking could be accommodated in other situations, including situations in which telework is a viable option, the duty station and employment type lend themselves more readily to physical distancing, or there is another position in which the employee's beliefs can be accommodated and to which she could be reassigned or transferred in accordance with 29 C.F.R. § 1605.2(d)(1)(iii). To the contrary, we take this occasion to remind agencies that religious liberty is integral to the Federal Merit System, *see* 5 U.S.C. §§ 2301(b)(2), 2302(b)(1), and any denial of a request for religious accommodation will be closely scrutinized by the Board.

¶23 As with a claim of status-based discrimination under Title VII, to prove a claim of retaliation for EEO activity, an appellant must prove by preponderant evidence that the prohibited consideration was a motivating factor in the

contested personnel action. *Pridgen*, 2022 MSPB 31, ¶ 30. Likewise, to obtain the full measure of relief available under the statute, she must prove that retaliation was a but-for cause of the action. *Id.*, ¶¶ 22, 30.

¶24      In her initial decision, the administrative judge found that the appellant failed to make her initial showing that EEO reprisal was a motivating factor in her removal. ID at 17. Although the appellant engaged in protected EEO activity and both the proposing and deciding officials were aware of it, she found no credible evidence to show that it was a motivating factor in the removal. *Id.* On petition for review, the appellant argues that the deciding official was aware of her EEO complaint.[5] PFR File, Tab 1 at 63. Based on the appellant's argument, it appears that she misunderstands the initial decision. As stated previously, the administrative judge found that the deciding official was aware of the appellant's EEO complaint; she simply did not find that this fact alone was enough to prove the appellant's claim. ID at 17. We decline to reweigh the evidence on review. *See Gardner v. Department of Veterans Affairs*, 123 M.S.P.R. 647, ¶¶ 33-34 (2016), *clarified by Pridgen*, 2022 MSPB 31, ¶¶ 23-24. For these reasons, we find that the appellant has not provided the Board a sufficient basis to disturb the administrative judge's finding that her EEO activity was not a motivating factor in her removal.[6] Accordingly, we affirm the initial decision.

---

[5] To the extent the appellant may be alleging that the agency's decision to place her in an absence without leave (AWOL) status, rather than grant her leave without pay, was based on disparate treatment religious discrimination or EEO reprisal, an agency's decision to place an appellant in an AWOL status is not itself an action appealable to the Board. *See, e.g.*, *Rose v. Department of Defense*, 118 M.S.P.R. 302, ¶ 14 (2012).

[6] Because we discern no error with the administrative judge's motivating factor analysis or conclusion regarding the appellant's discrimination and retaliation claims, we do not reach the question of whether the appellant's religion or EEO activity was a "but-for" cause of the removal action. *See Pridgen*, 2022 MSPB 31, ¶ 22 (holding that, while an appellant who proves motivating factor and nothing more may be entitled to some prospective relief, to obtain the full measure of relief available under the statute, she must prove but-for causation.)

## NOTICE OF APPEAL RIGHTS[7]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

---

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.   5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).   If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[8] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                    /s/ for
                                  Jennifer Everling
                                  Acting Clerk of the Board
Washington, D.C.